## LAMOINE MOTT ESTATE v. NEIMAN.
### No. 10222.

Circuit Court of Appeals, Eighth Circuit.

May 10, 1935.

Oscar Strauss, of Des Moines, Iowa (George A. Wilson, of Des Moines, Iowa, on the brief), for appellant.

James B. Ryan, of Des Moines, Iowa (Don E. Neiman, of Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant was the owner of certain premises in Des Moines, Polk county, Iowa. April 19, 1919, its trustees entered into a written lease of these premises with one Harry N. Hansen. This lease was for a period of 53 years and 8 months, and by its terms permitted assignment. The following provisions of the instrument are deemed pertinent to the solution of this controversy:

"Par. II. The lessee covenants and agrees to pay the lessor as rent for said premises the annual rental of Three Thousand ($3,000.00) Dollars per annum for the entire term of this lease, beginning on the first day of May, 1919, and ending on the 31st day of December, 1972. Said rental to be paid quarterly in advance in equal installments, except that the first installment to be paid on the first day of May, 1919, will be for but two (2) months, being May of 1919 and June of 1919, and on the first day of July, 1919, the first quarterly payment shall be made and each succeeding installment is to be paid upon the first day of each and every quarter thereafter during the full term of this lease. * * *

"Par. III. The lessee shall in all instances, in addition to said stipulated rental, pay all taxes, general or special, all public rates, dues and special assessments of every kind which shall become due and payable or which are to be assessed against or levied upon said real estate or improvements thereon during the term of this lease, except that the lessor shall pay the second half of the general tax for 1918, amounting to $595.02. * * *

"It is further agreed that in the case of non-payment or a failure by the lessee to pay and discharge any taxes, assessments, rates, charges or levies as herein provided or to insure or maintain insurance as provided in this lease or to pay the premium thereon or in event of any other breach of or default by the lessee in any of the provisions, covenants or conditions of this lease, then the said lessor, may at its option and without prejudice to any other right of said lessor in consequence of said breach or default, procure or effect such insurance or pay such premiums, taxes, assessments, rates, charges or levies, or redeem from any sale or forfeiture made because of the non-payment thereof or buy in said premises at any tax sale, and the amount of any and all payments made for such purpose as well as all other money or sums advanced or expended under the authority of or pursuant to any of the terms or provisions of this lease, shall be forthwith paid by the lessee, with interest thereon at 8% per annum and such amounts and interest shall be taken as so much additional and further rental for the said premises and the said lessor shall have a lien for the re-payment of the same, to the same extent as for other rent herein reserved. * * *

"Par. VIII. It is further agreed and notice is hereby given that no mortgage except as herein provided, mechanic's or other liens shall in any way, manner or degree affect the claim of the lessor on the building on said premises or its rights in

said premises. Lessee agrees to give written notice of this fact to the contractor or contractors furnishing the labor and material for any building to be erected thereon or any improvement made thereon before any such contract is let and in case of any liens accruing thereon, the lessor, shall have the right and privilege to pay same after it is legally established or any portion of the same, and the amount so paid shall be so much additional rent due from the lessee together with interest at the rate of 8% per annum from the date of such payment. * * *

"Par. XIV. It is further covenanted and agreed that the lessor in addition to the lien provided by law, shall have a lien for all such costs, attorney's fees, rent reserved and for all taxes, assessments paid by it and for the payment of all money as provided in this lease to be paid by the lessee on all the buildings and improvements placed upon the said premises, upon the leasehold estate hereby created and upon all property kept or used upon the leased premises, whether the same is exempt from execution or not and upon the rents of all improvements and buildings situated upon said premises and such lien shall continue until the amounts due are paid and may be enforced by the procedure for the enforcement of landlord's liens or in any other manner."

By supplemental agreement, dated September 1, 1932, the annual rental of said premises for the 3-year period beginning July 1, 1932, was reduced to $2,000, payable in quarterly installments. The lease was duly recorded in the deed records of Polk county and also in the chattel mortgage records of that county. August 4, 1919, Hansen, the lessee, assigned all his rights and interests in this instrument to the Garver Hardware Company. The assignee forthwith entered into possession of the premises and continued in such possession, conducting a hardware business in the building thereon, until it was adjudicated a bankrupt April 6, 1933. The assignment to the hardware company was recorded in the deed records, but not in the chattel mortgage records of Polk county.

It seems to be agreed that the hardware company discharged its obligations under the lease down to the year 1932. It defaulted in the payment of taxes and assessments levied upon the premises in 1932 and 1933. It appears that under the statutes of Iowa general taxes are assessed in one year, and the levy made on such assessment is payable on January 1st in the following year. July 1, 1933, appellant filed in the bankruptcy court its claim divided as follows:

"$1,000.00 delinquent stipulated rental;

"$3,358.00 taxes, interest and penalties for 1931 payable in 1932;

"$1,984.45 taxes, interest and penalties for 1932 payable in 1933;

"$1,550.00 six months future rent allowed by the Statutes of Iowa, Section 10263."

And asked that the same be allowed both as a general and prior claim—the former in the alternative by amendment November 12, 1934. The referee, on the latter date, ordered: "That the claim of the Lamoine Mott Estate for rent be established in the sum of Twenty-five Hundred ($2500.00) Dollars as a preferred claim and as a lien upon the proceeds of the sale of the assets in the hands of the trustee, and that the claim of the Lamoine Mott Estate for taxes against the leased premises be disallowed as a preferred or secured claim, and the same be allowed as a general claim in the amount of Five Thousand Three Hundred Sixty-two and 45/100 ($5362.45) Dollars."

On review, this order was approved and confirmed by the District Court, and this appeal followed. The defaulted taxes were not paid by appellant under provision of paragraph III of the lease.

It will be observed that the rentals were allowed as a preferred claim and as a lien upon the proceeds of the sale of assets in the hands of the trustee. The items of taxes, interest, and penalties were allowed as a general claim. The only matter at issue is whether these items should also be allowed as preferred and as a lien. Appellant bases its claim of preferential lien upon two grounds: (a) The obligation to pay taxes for the use of premises is the equivalent of rent, although not so named, and the landlord has his statutory lien therefor; and (b) paragraph XIV of the lease, being a chattel mortgage clause, duly recorded, is legally sufficient to protect the claimant's lien for taxes. These points will be considered in the order stated.

The statutes of Iowa (Code 1931) defining and limiting the lien of a landlord are the following:

"10261. *Nature of Landlord's Lien.* A landlord shall have a lien for his rent upon all crops grown upon the leased premises, and upon any other personal property of the tenant which has been used or kept thereon during the term and which is not exempt from execution.

"10262. *Duration of Lien.* Such lien shall continue for the period of one year after a year's rent, or the rent of a shorter period, falls due. But in no case shall such lien continue more than six months after the expiration of the term.

"10263. *Limitation on Lien in Case of Sale under Judicial Process.* In the event that a stock of goods or merchandise, or a part thereof, subject to a landlord's lien, shall be sold under judicial process, order of court, or by an assignee under a general assignment for benefit of creditors, the lien of the landlord shall not be enforcible against said stock or portion thereof, except for rent due for the term already expired, and for rent to be paid for the use of demised premises for a period not exceeding six months after date of sale, any agreement of the parties to the contrary notwithstanding."

▮ The lien is given to secure the payment of "rent," and, to come within the statutory provisions, the items sought to be preferred must respond to that definition. Appellant bases its contention that the claimed items for taxes, interest, and penalties are in fact rent, and therefore within the terms of the lien statutes, upon the ground that the payment of such charges was a part of the consideration to be rendered for the use of the premises, citing In re Copping's Estate (D. C.) 29 F.(2d) 998, and Perrin & Smith Printing Company v. Cook Hotel & Excursion Company, 118 Mo. App. 44, 93 S. W. 337. The opinions in these cases by such able jurists as Judge Hutcheson of the Fifth Circuit, and the late Judge Goode of the St. Louis (Missouri) Court of Appeals, are entitled to receive, and have received, respectful consideration; but, in construing this lease contract, in conjunction with the express terms of the Iowa Statutes, we feel compelled to follow the general rule that there is a clear distinction between taxes and rent in common usage, and that the term "rent" may not be so construed as to include taxes, "in the absence of a clear intention of the parties to that effect expressed in the lease." Guild v. Sampson,

232 Mass. 509, 122 N. E. 712, 714; In re Sherwoods (C. C. A. 2) 210 F. 754, 759, Ann. Cas. 1916A, 940; 36 Corpus Juris, par. 1051, p. 291; 16 R. C. L. par. 310, p. 813.

In Britton v. Western Iowa Co., 9 F. (2d) 488, 491, 45 A. L. R. 711, we said: "As a part of the rent and, therefore, as included within the protection of the landlord's lien for rent, the court included certain general taxes. This action of the court is challenged. If such taxes were a part of the rental such inclusion was proper, otherwise, not. Whether they were so included depends upon the contract between the parties. McCann v. Evans (3d Cir.) 185 F. 93, 107 C. C. A. 313. That contract is the lease."

▮ In that case we thought that the provision in the lease for the payment of the taxes by the lessee "as an additional consideration for the leasing of said premises" revealed "an intention of the parties to treat such taxes as a part of the rental for the property." The lease under consideration not only has no such provision, but, on the contrary, contains language which expressly defines and limits the term "rent" as used therein, and excludes the construction for which appellant contends. In paragraph II the annual rental of $3,000 is stated. For the circumstances conditioning the creation of further and additional rental items, we need refer but to two paragraphs, III and VIII. In the first of these paragraphs it is provided that, in case of default in the payment of the taxes by the lessee, the lessor might pay the same, and the amount so paid should be taken "as so much additional and further rental for the said premises, and the said lessor shall have a lien for the repayment of the same, to the same extent as for other rent herein reserved." This language is wholly inconsistent with the view that taxes were included generally within the term rent. In its opening sentence, paragraph III requires the payment of taxes in addition to rental—not as a part thereof. Paragraph VIII tends to confirm this construction of the lease. It empowers the lessor to pay all mechanic's or other liens filed against the building on the premises, "and the amount so paid shall be so much additional rent due from the lessee." Manifestly, accrued taxes were not made rental, in the absence of payment by the lessor, under the general

terms of the lease. It must follow that appellant is not entitled to a statutory landlord's lien for unpaid taxes, interest, and penalties.

We consider next the claim under the chattel mortgage clause of the lease. In Fejavary v. Broesch, 52 Iowa, 88, 2 N. W. 963, 35 Am. Rep. 261, it is held that a clause in a lease making the rent charge a lien upon the crops and stock upon the leased premises, "whether exempt from execution or not," constitutes in effect a chattel mortgage, valid and enforceable. It must be recorded to be valid against existing creditors or subsequent purchasers without notice. Sioux Valley State Bank v. Honnold, 85 Iowa, 352, 52 N. W. 244. If unrecorded, it is subordinate to a subsequent chattel mortgage, even though the mortgagee knew that the mortgagor was a tenant, but was without knowledge that the lease granted a lien on the tenant's property. Brenton v. Bream, 202 Iowa, 575, 210 N. W. 756.

"Covenants in a lease requiring the lessee to pay taxes run with the land, and on the assignment of the lease the assignee becomes liable to the landlord for all taxes which may thereafter become due and payable under the terms of the lease while the assignee continues in possession of the premises." In re Sherwoods (C. C. A. 2) 210 F. 754, 755, Ann. Cas. 1916A, 940; Webster v. Nichols, 104 Ill. 160; 16 R. C. L. par. 314, under title Landlord and Tenant.

The liability of the assignee ceases with privity of estate, unless by express covenant he is made privy to the contract. The assignment from Hansen carries no such covenant. In the instant case, while the personal property of the hardware company is charged with the lien of taxes as between lessor and assignee of the lease, creditors of the assignee are not so bound in the absence of notice, actual or constructive, of such a chattel mortgage clause. Such creditors in bankruptcy are represented by the trustee who is "vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon." Such trustee is "not necessarily concluded by an instrument or agreement which might have been good against the bankrupt had bankruptcy not intervened." Albert Pick & Co. v. Wilson (C. C. A. 8) 19 F.(2d) 18, 20. It is neces-

sary, therefore, to inquire as to the notice, actual or constructive, to creditors of the existence of this chattel mortgage clause. It is conceded that there was no actual notice, but reliance is placed upon the constructive notice imparted by the recordation of the lease containing the clause in question. The lease, originally, was duly recorded in both deed and chattel mortgage records. The assignment from Hansen to the hardware company was recorded only in the former.

The recording statutes of Iowa applicable to chattel mortgages found in the Code of 1931 are the following:

"10015. *Sales or Mortgages—Recording.* No sale or mortgage of personal property where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and such instrument or a true copy thereof is duly recorded by, or filed and deposited with, the recorder of the county where the mortgagor or vendor resides if he be a resident of this state at the time of the execution of the instrument; but if he be not such a resident then of the county where the property is situated at that time."

"10021. *Index Book.* The county recorder shall keep an index book in which shall be entered a list of instruments affecting title to or incumbrance of personal property, which may be filed under this chapter. Such book shall be ruled into separate columns with appropriate heads, and shall set out:

"1. Time of reception.
"2. Name of each mortgagor or vendor.
"3. Name of each mortgagee or vendee.
"4. Date of instrument.
"5. A general description of the kind or nature of the property.
"6. Where located.
"7. Amount secured.
"8. When due.
"9. Page and book where the record is to be found.
"10. Extension.
"11. When released.
"12. Remarks and assignments."

Counsel for appellee point out that no property of Hansen, the original lessee,

which might have been subject to this clause, is involved. No property was described as covered by this mortgage clause in the lease as recorded in the chattel mortgage records, because no property of Hansen subject to the clause existed. This chattel mortgage clause could not attach to the property of the hardware company until that company succeeded to the tenancy by assignment, and a search of the chattel mortgage records would not have disclosed the name of this mortgagor, the nature of the security, nor where located, as required by the indexing statute. For this reason, counsel for appellee urge that we have, in effect, an unrecorded chattel mortgage, invalid against creditors without notice. This contention finds support in the late case of Soehren v. Hein, 214 Iowa, 1060, 243 N. W. 330. The point in issue is sufficiently stated in the syllabus:

"Mortgages: Construction and Operation—Chattel Mortgage Clause—Failure to Index—Effect.

"A recorded real estate mortgage containing a mortgage on the rents of the mortgaged real estate, but not indexed in the chattel mortgage index, is, as regards the rents, subject to a subsequent like mortgage taken by one for value and without notice of the former chattel mortgage clause."

We have already seen that, under the statutory law of Iowa, as construed by its court of last resort, a subsequent lienor, and hence a creditor, is not bound by knowledge that a mortgagor in an unrecorded chattel mortgage is a tenant, if without knowledge that that lease granted a lien on the tenant's property. An examination of the chattel mortgage records would have disclosed no lien against the property of the hardware company. The Supreme Court of Iowa has declared that indexing in the chattel mortgage index is essential to validity through constructive notice, even though the chattel mortgage clause is contained, as here, in an instrument recorded in the real estate records. Being of opinion that no preferential lien with respect to the claimed items for taxes, interest, and penalties has been preserved to appellant, it follows that the order and decree appealed from should be affirmed, and it is so ordered.