The ELMIRA CORPORATION, a corporation, Appellant,

v.

Joseph D. BULMAN and Sidney M. Goldstein, Trustees under a chattel deed of trust, Appellees.

No. 2016.

Municipal Court of Appeals for the District of Columbia.

Argued June 24, 1957.

Decided Oct. 23, 1957.

Scott P. Crampton, Washington, D. C., for appellant.

Martin J. Kirsch, Washington, D. C., for appellees.

Before ROVER, Chief Judge, and HOOD, and QUINN, Associate Judges.

ROVER, Chief Judge.

In this controversy a landlord asserting his statutory lien for rent, and the trustees under a chattel deed of trust, each claim the right to prior payment from the proceeds of a sale of the tenant's personal property.

Appellant landlord leased to one Snyder for the purpose of conducting a grocery business certain premises in the District of Columbia for a period of ten years. The terms of the lease, which commenced on October 29, 1945, provided for a base rent of $350 per month, plus a percentage on the gross volume of business done in ex-cess of $5,000 per week. A sum of $1,050 was paid upon signing the rental agreement and credited as follows: $350 for the first month's rent, $350 for the second month, and $350 for the last month covered in the lease. In a separate provision of the lease the lessee agreed to pay utility bills, the water rent charged by the District, and the costs for trash collection.

On November 12, 1954, Snyder and his wife executed a chattel deed of trust covering equipment on the premises to secure an indebtedness on open trade accounts under which the appellees were named trustees. Thereafter Snyder defaulted in payments on the notes secured by the deed of trust and failed to pay the rent and water charges for a period of two months. The following courses of action were then pursued by the parties here involved.

On November 10, 1955, appellant brought a landlord and tenant suit against Snyder for possession; no claim for rent was made. Prior to the judgment rendered in its favor, appellant notified the appellees' attorney of its landlord's lien for rent owed; however, two days later, on November 23, 1955, the appellees foreclosed on the property.

On November 28, 1955, Snyder filed a petition in bankruptcy in which he declared the sum of $730 owed to appellant for rent. One month later, on December 29, 1955, appellant filed a proof of claim which was subsequently amended to include the rent and water charges in the sum of $1,069 in the bankruptcy proceedings.

The only assets of Snyder sufficient to satisfy either claim of the parties before us are those funds received by the trustees from the foreclosure sale prior to the bankruptcy proceedings. Any previous adjudication of the right to prior payment out of this sum was precluded by a stipulation entered into between the trustee in bankruptcy and the trustees under the deed of trust to the effect that " * * * the summary jurisdiction of the Bankruptcy Court does not extend to and is not de-

terminative of any rights or claims by the landlord or others to the funds and proceeds of the aforesaid auction sale * * *." This stipulation was approved by the referee in bankruptcy, and in referring to the claim of the landlord in his report he stated it had not submitted " * * * the resolution thereof to the jurisdiction of this Court as it is not properly cognizable herein."

The question of the respective rights of the parties to the limited funds is squarely before us in this action by the landlord to recover rent and water charges from the trustees. Pending our determination of the controversy, the parties have agreed that no disbursement of the funds in dispute will be made. In the trial court the trustees' motion for summary judgment was denied, and after trial on the merits judgment was rendered for them.

■ The landlord first contends the trial judge failed to follow the law of the case in granting judgment for the trustees on the same material facts as those before a different judge who had previously denied their motion for summary judgment. When a motion for summary judgment is denied, the ruling establishes that there is an undisposed of fact issue requiring trial. Turek v. Yellow Cab Co. of D. C., D.C. Mun.App., 131 A.2d 923. Such a ruling cannot be said to be a decision on the issue and is interlocutory in character, the proceeding being *in fieri* upon the denial of summary judgment.[1] This jurisdiction has frequently held that a final judgment is necessary to sustain the application of the law of the case rule.[2] The landlord's argument must therefore fail for two reasons: (1) the trial judge, in determining the case on the merits, did not overrule anything actually decided by the denial of the summary judgment; and (2) the ruling denying the motion did not constitute a final

order. The only remaining question is whether the trial judge decided the case correctly on the merits.

The common-law remedy of distress was abolished in the District in 1867, and in its place Congress enacted the statutory lien as stated in Code 1951, § 45–915:

"The landlord shall have a tacit lien for his rent upon such of the tenant's personal chattels, on the premises, as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due and until the termination of any action for such rent brought within said three months."

The methods of enforcing the lien are set forth in Code 1951, § 45–916:

"The said lien may be enforced— ,

"First. By attachment, to be issued upon affidavit that the rent is due and unpaid; or, if it be not due, that the defendant is about to remove or sell some part of said chattels.

"Second. By judgment against the tenant and execution, to be levied on said chattels, or any of them, in whosesoever hands they may be found.

"Third. By action against any purchaser of said chattels, with notice of the lien, in which action the plaintiff may have judgment for the value of the chattels purchased by the defendant not exceeding the rent in arrear."

■ The nature of the statutory lien is perhaps best stated in the early case of Bryan v. Sanderson, 10 D.C. 431, 3 MacArthur 431, in which the court said:

" ' * * * It will be observed that the statutory lien differs in a material respect from its common-law prototype, the right to destrain. Under the

1. Moyer v. Moyer, D.C.Mun.App., 134 A. 2d 649.
2. United States v. U. S. Smelting, Refining & Min. Co., 339 U.S. 186, 70 S.Ct. 537, 94

L.Ed. 750; McNeill v. Jamison, D.C. Mun.App., 116 A.2d 160; Davis v. Boyle Bros., D.C.Mun.App., 73 A.2d 517.

latter, unless distraint were actually made, the landlord acquired no lien; his was an inchoate right to a lien to be perfected by distress, rather than a lien in itself. But the lien of the statute exists independently of the prescribed methods of enforcing it. Indeed, commencing with the tenancy, it exists *before* those methods have been or can be resorted to—*i. e.*, before any rent has accrued. "A statutory lien implies security upon the thing before the warrant to seize it is levied. It ties itself to the property from the time it attaches to it, and the levy and sale of the property are only the means of enforcing it." In other words, if the lien is given by the statute, proceedings are not necessary to fix the *status* of the property. [Citing Morgan v. Campbell, 22 Wall. 381, 22 L.Ed. 796, and other cases.] * * *' "

Summed up, the statutory lien without possession parallels the common-law lien accompanied by possession. Fowler v. Rapley, 15 Wall. 328, 82 U.S. 328, 21 L.Ed. 35; Beall v. White, 94 U.S. 382, 24 L.Ed. 173. By virtue of the statute, the lien attaches the moment chattels are brought on the premises and exists independently of the means of enforcement authorized by the statute. Moses v. Labofish, 76 U.S. App.D.C. 401, 132 F.2d 16; see also Spilman v. Geiger, 61 App.D.C. 164, 58 F.2d 890. In view of these decisions, the lien under Section 915 of Title 45 stands as a perfected lien.

■ As between the competing liens of a landlord and a deed of trust, the Supreme Court ruling on the statute here involved in Webb v. Sharp, 13 Wall. 14, 80 U.S. 14, 20 L.Ed. 478, said:

"The deed of trust was, in effect and purpose, nothing but a mortgage. It was given to secure the payment of a

loan. It was an express lien created by deed to secure the performance of a contract. The landlord's lien is an implied or tacit lien, created by law to secure the performance of another contract and, of the two, the landlord's is the prior lien, and cannot be displaced by the other. * * * "

Although it is conceded that the deed of trust was executed after the tenancy commenced and after the chattels were already on the premises, the argument that the trust might nevertheless have priority over the landlord's lien because no rent was in arrears at the time of its execution is not valid; for as we have said the landlord's lien attaches at the commencement of the tenancy, or when the chattels are brought on the premises, and continues for three months after the rent becomes due. Webb v. Sharp, supra; Spilman v. Geiger, supra.

■ This leads us to the argument of the trustees. It is insisted that the landlord's failure to invoke any of the precise methods of enforcement set forth in Section 916 of Title 45 resulted in the loss of this statutory protection. To support this contention we are referred to United States v. Saidman, 97 U.S.App.D.C. 344, 231 F.2d 503, 507. The trial court, in upholding the trustees' view, has placed equal stress on this decision. In that case, the landlord's right to prior payment on the strength of its lien was contested as against Federal and District of Columbia tax claims, the rights of the governmental bodies resting on priority statutes. The presence of priority statutes involved there clearly distinguishes that case from the present controversy. In granting judgment for the Federal Government in Saidman, the court followed an unwavering line of twelve Supreme Court decisions over the past ten years, all of which have recognized the supremacy of Federal tax claims over statutory liens.[3] We find little in the Saidman case to support the trial court's conclusion.

---

3. For an excellent survey of these twelve decisions see Mason City & Clear Lake R. Co. v. Imperial Seed Co., D.C.N.D. Iowa, 152 F.Supp. 145.

The language of the court pointedly distinguishes it from the present situation:

"* * * The landlord may acquire title to or possession of the chattels on which the lien exists by following the first or second method prescribed by Section 45–916 for enforcing the lien, but affirmative action to accomplish this is required. The statutory provisions then do not of their own force create a specific and perfected lien *in the sense long understood as essential to overturn the Federal priority.*" (Emphasis supplied.)

In the instant case, the landlord alleged in its complaint that rent was due for the months of October and November 1955. In contrast with this, its proof of claim in the bankruptcy proceedings alleged rent due for the months of September and November 1955. We think the latter is correct and is confirmed by the evidence in the record before us. The testimony tended to show that a rental payment was made in September, but was credited to the unpaid August rent. The September rent due August 29, then, was never paid. The October obligation was met out of the deposit made by the tenant when the lease was executed, which provided that $350 of this deposit be allotted to the rent for the last month covered by the lease, which was October. No dispute is made as to the tenant's failure to pay the November rent, nor is there any controversy as to money owed for the months in question under the provisions of the lease requiring the tenant to pay as rent a percentage on the gross volume of business done.

Since no claim for rent was made in the landlord's possessory action, its first real attempt to establish its right to rent came when the proof of claim was filed on December 29, 1955, and later allowed in the bankruptcy proceedings. Under § 45–915, any recovery for rent must be dependent on the life of the lien which continues for three months after the rent is due or until the termination of any action for rent brought within the three months. More specifically, the landlord is limited to the rent due between September 29 and December 29, which is the $350 due October 29 for the November rent. Its lien for the September rent is lost because of its failure to take timely action.

Undoubtedly the best means of enforcing the lien are prescribed in § 45–916; however, the problem is not one of enforcement but whether the landlord has asserted its claim for rent, and the method employed by the landlord here was upheld in a similar case construing our statute. In re Caplan, D.C., 23 F.2d 680. Inasmuch as the lien here was perfected and had attached before the landlord filed its proof of claim, under § 45–915 the lien retained its vitality for three months after the last rent became due, and could not be displaced by the trustees' foreclosure sale during this statutory period. If the lien could be enforced against the trustees in possession of the property, then they are duty bound to discharge the lien out of the proceeds of the sale of the chattels. To hold otherwise would destroy the lien rights accorded a landlord under the statute and revert him to the status of his common-law predecessor. Moreover, since the bankruptcy court allowed the claim for rent, but would not extend its jurisdiction to determine this controversy, the landlord's only recourse was to the trial court, and we deem it proper.

■■ This being so, the only question remaining is whether the term "rent" can be construed to include the water charges so as to come within the protection of the lien. The statutory lien is for rent, and it should not be extended beyond the terms of the statute to include other items such as the water charges unless the clear intention of the parties is shown in the contract to make this a part of the consideration for leasing the premises.[4] Such an intention does not appear here. The covenant to pay

4. Lamoine Mott Estate v. Neiman, 8 Cir., 77 F.2d 744, 99 A.L.R. 1097. See Annotation, 99 A.L.R. 1104.

water charges is found in a separate provision of the lease from that setting out the rent. It appears in a paragraph broadly written which covers the costs of utilities, trash collection, the lessor's exemption from liability for damage suits, and a promise of the lessee to furnish heat and water. We are unable to find any language indicating that water charges or the other items were to be included *as a part of the rent*. The landlord's claim for the water charges is nothing more than a claim for damages for the breach of a covenant, which, of course, does not come within the lien.

Reversed with instructions to enter a judgment against appellees for $350 for the rent for the month of November 1955.