Charles Edward WASHINGTON, Appellant,

v.

GOVERNMENT OF DISTRICT OF COLUMBIA (a Municipal Corporation), Appellee.

No. 2328.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 9, 1959.

Decided June 23, 1959.

Dovey J. Roundtree, Washington, D. C., with whom Julius W. Robertson, Washington, D. C., was on the brief, for appellant.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

This is an appeal from the granting of a summary judgment in favor of the District of Columbia.

In his amended complaint appellant alleges that on November 13, 1956, he was removed from his position as a heavy truck driver in the District government "without proper notice * * * and in violation of rules and regulations governing the employment of District of Columbia employees"; that he was placed in a non-pay status from the date of removal through March 23, 1957,

when he was restored to pay status by the Commissioners of the District; that he was entitled to his wages from November 14, 1956, to March 23, 1957, which amount he fixed at $2,000 and for which he asked judgment.

The District first filed a motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted; this motion was denied by Judge Kronheim, whereupon the District filed a motion for summary judgment supported by certified copies of two orders of the Commissioners and affidavits of William A. Xanten, Superintendent, Division of Sanitation (the unit in which appellant was employed) and of Samuel C. Seiler, Personnel Officer of the Department of Sanitary Engineering (the custodian of the personnel file of appellant), the Sanitation Division being a part of the Sanitary Engineering Department. This appeal is prosecuted from an order by Judge Beard granting summary judgment.

Counsel for appellant raises two contentions: (1) that the decision of Judge Kronheim denying the District's motion to dismiss established as the law of the case that there existed a genuine issue of material fact and that accordingly it was error for Judge Beard to entertain and grant the motion for summary judgment; and (2) that Judge Beard erred in finding that there was no genuine issue of material fact and that the District was entitled to judgment as a matter of law.

As we understand the contention of counsel for appellant in reference to the first point, it is that while the District's motion was entitled a motion to dismiss, in view of the fact that Judge Kronheim before ruling considered documents outside the complaint, under the provisions of Rule 12(b) [1] of the trial court he was required to and did treat it as a motion for summary judgment and dispose of it in accordance with the provisions of Rule 56(c). [2]

■ We have held that an order *denying* a motion to dismiss or for summary judgment is an interlocutory and not a final order and that a final judgment is required to sustain the application of the law of the case rule. [3]

We do not understand that counsel for appellant contends that if the District's first motion is to be regarded simply as a motion to dismiss Judge Kronheim's order denying it established the law of the case, but rather that in view of the matters outside the complaint allegedly considered at the hearing on that motion it was treated as one for summary judgment, and for that reason Judge Beard could not as a matter of law consider and grant the motion for summary judgment subsequently filed by the District because Judge Kronheim's decision constituted the law of the case.

■ In view of our determination, for the reasons hereafter discussed, that the first motion was treated merely as one to dismiss and not for summary judgment and that accordingly under settled law the decision denying it did not constitute the law of the case we are not required to decide whether our ruling would be different if we were confronted with an order denying a summary judgment.

---

1. " * * * If, on a motion asserting the defense numbered (5) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *."

2. " * * * The judgment sought shall be rendered forthwith if the *pleadings*, *depositions*, and *admissions* on file, together with the *affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *." (Emphasis supplied.)

3. Elmira Corporation v. Bulman, D.C.Mun. App., 135 A.2d 645; McNeill v. Jamison, D.C.Mun.App., 116 A.2d 160; Davis v. Boyle Bros., D.C.Mun.App., 73 A.2d 517.

Rules 12(b) and 56(c) of the trial court are counterparts of the same rules of the Federal Rules of Civil Procedure, 28 U.S.C.A. Our United States Court of Appeals in Sardo v. McGrath, 90 U.S.App.D.C. 195, 196 F.2d 20, 22 in discussing the interrelationship of the same two rules said that whether documents " * * * can qualify as 'matters presented' within 12(b) depends, in our view, upon whether it is the sort of material contemplated by Rule 56. The latter is the definitive rule concerning summary judgment; Rule 12(b) merely provides one means of arriving at that end. It does not enlarge the record on which a summary judgment may be granted under Rule 56. Rule 56(c) says that summary judgment shall be granted 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, * * * there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Thus, the extra-pleading matters presented must be either 'depositions,' 'admissions' or 'affidavits.' All three possess certain characteristics which make them fitting instruments for cutting through a possible maze of false, illusory or collateral issues raised by loosely-drawn pleadings. * * *"

Counsel for appellant attempt to bring their case within the purview of Rules 12(b) and 56(c) when they state on page 4 of their brief: "Virtually the same matter the same cases and authorities and affidavits containing the precise averments were presented to the Court by pleadings and in arguments at the hearing upon which both the motion to dismiss and the motion for summary judgment were based. It follows therefore, that the question relative to issues of fact and a claim for adjudication had been fully established by the Court's ruling of August 29, 1958, when appellee's motion to dismiss was denied."

While it is true that the record could be more precise, we find in it no evidence that Judge Kronheim had before him any of the type of "extra-pleading matters" discussed

in Sardo. It is true that some discussion was had concerning a document called "District Personnel Manual, Transmittal Sheet No. 5" and it probably received consideration; just what the contents of this document are we do not know as it was not made a part of the record. Reference was also made at the hearing to certain rules and regulations, allegedly promulgated by the Sanitation Department, setting forth the procedures to be followed in discharging employees and which procedures allegedly were not followed when appellant was discharged. This document was made a part of the record by the Corporation Counsel when he attached it as an exhibit to his motion for summary judgment. Even if it had been actually promulgated it is dated March 1, 1957, and accordingly was not in existence on November 14, 1956, the date of appellant's removal. The affidavits appellant's counsel contend were before Judge Kronheim obviously are those of Xanten and Seiler heretofore referred to; these documents were attached as exhibits to the motion for summary judgment and were dated September 8, 1958; the hearing on the motion to dismiss was concluded on August 29, 1958. The only other document we find in the record is one in the form of an affidavit signed by appellant; it is dated the ——— day of August 1958 and is not sworn to. Again, we find in the record a suggestion by the Corporation Counsel during the argument on the motion to dismiss that certain documents be added to the record so that the matter could be settled on the basis of a summary judgment. The discussion ended with this colloquy:

"Mr. Hofflund: Well, are you willing to proceed right here and now with the hearing on a motion for summary judgment?

"Mrs. Roundtree: I am not ready to proceed."

The court thereupon made the following entry:

"Defendant's Motion to dismiss overruled. Defendant granted 10 days within which to file an Answer."

It is clear that Judge Kronheim treated the motion as one to dismiss the complaint; his denial of it was not a final order and his decision did not prevent Judge Beard from independently ruling on the merits of the questions raised by the motion for summary judgment.

Coming to the merits of the summary judgment motion, as stated earlier in this opinion, appellant's case was based on the proposition that he was removed "without proper notice * * * and in violation of the rules and regulations governing" District employees and that accordingly he was entitled to wages for the period he was in a non-pay status. We are not referred to the "rules and regulations" the District is charged with having violated. Presumably the reference is to the "Stated Practice on Non-Vets" made a part of the record by the District as an exhibit to the motion for summary judgment, but this document is dated approximately four months after appellant's removal and, according to the Xanten affidavit that is uncontradicted, this document "was prepared by personnel of the Division of Sanitation for my consideration, * * *. This office memorandum has never been officially promulgated. It was and is without force or effect in the Division of which I am Superintendent."

On the other hand, from the Seiler affidavit and the certified copies of the Commissioners' orders we find that appellant's case was handled as follows:

On November 14, 1956, the Superintendent, Mobile and Plant Equipment, Division of Sanitation (appellant's superior) recommended to Xanten, Superintendent of the Division, that appellant be discharged "for leaving a District truck unattended, with key in ignition and motor running, on Tuesday, November 13, 1956 at First and Eye Streets, S. E. * * * and for past record of warnings & suspensions." [4]

On November 15, 1956, the Commissioners were advised that appellant desired to appeal his discharge and had retained counsel to represent him.

On November 16, 1956, Xanten, with the approval of the Director of Sanitary Engineering, recommended to the Commissioners that appellant be removed from his position as a heavy truck driver for cause, effective December 8, 1956. Notice of this proposed action was sent to appellant by registered mail on November 19, 1956.

On November 29, 1956, the Commissioners approved the recommendation for removal; notice of the final removal action as approved by the Commissioners was sent to appellant by registered mail on December 4, 1956.

On December 4, 1956, the Commissioners were advised by counsel for appellant that he desired to appeal from their order and that a hearing was requested "in accordance with the usual procedures concerning employee grievances."

On December 6, 1956, the Commissioners notified appellant by registered mail that the effective date of his removal would be deferred pending action on his appeal to the District of Columbia Central Grievance Committee and that he would remain in a non-pay status pending final decision on his appeal.

4. A more detailed account of appellant's shortcomings is set forth in the Commissioners' order of November 16, 1956: "(1) Leaving a D. C. truck unattended, with key in the ignition and motor running, on Tuesday, November 13, 1956 at First and Eye Sts., S. E. Mr. Arney Supt. Garbage Collection noticed the truck and watched it for approximately 20 minutes. He then sent Mr. Lugenbeel to the truck, who, turned the motor off and took the key with him back to Mr. Arney's Office. Approximately 15 minutes later Charles Washington came to Mr. Arney's Office looking for the key. (2) And for past record of: (a) Failure to report for work, and to notify his superiors of the absence of safety equipment on his truck, for which he received a 2½ days suspension on July 11, 1956. (b) Failure to make satisfactory arrangements to liquidate his debts for which he was warned on July 19, 1956."

On February 7 and 11, 1957, the Grievance Committee held oral hearings on the appeal; at these hearings appellant was represented by counsel of his own choice and was given an opportunity to call and examine witnesses under oath, and to introduce evidence.

On March 22, 1957, the Commissioners notified appellant by registered mail that the Grievance Committee had recommended that the period during which he had been in a non-pay status constituted ample disciplinary action and that he should be restored to active duty status. Appellant was directed to report for work on March 25, 1957; he so reported and resumed his employment.

On April 2, 1957, Mr. Xanten recommended to the Commissioners that the removal action be cancelled and that appellant be restored to duty from a non-pay status effective March 25, 1957, but that he be carried in a non-pay status from November 14, 1956, through March 23, 1957. This recommendation was approved by the Commissioners on April 16, 1957, and a formal order to that effect was passed so that appellant has been continuously employed in his original position in a pay status since March 25, 1957.

The trial judge then, in considering the District's motion for summary judgment, had before him all of the facts outlined above. It is fair to say that these facts were uncontradicted; the only possible sources of contradiction were the general allegations in the complaint (for the most part merely conclusions) and the unsworn statements of appellant in the undated document heretofore referred to. We think on the whole record the trial judge was quite justified in

finding that there was no genuine issue as to any material fact. Nor do we find anything in the record to support the allegations of the complaint that appellant was removed from his position "in violation of rules and regulations governing the employment of District of Columbia employees." So far as the record shows there were no such rules and regulations in effect at the time of his removal. It is clear that the "rules" and "regulations" relied on by appellant were never adopted nor promulgated as is demonstrated by Xanten's affidavit; even if there were a question concerning their adoption they postdate the removal by approximately four months.

▇ Viewing the actions of the responsible District officials, it seems obvious that appellant was dealt with very fairly. He was notified of his discharge and the reasons therefor (and they were not inconsequential), he was allowed to appeal, a hearing was accorded him, he was represented by counsel of his own choice, they were permitted to call and examine witnesses under oath and to introduce testimony. Every step taken in the removal of appellant, his being placed in a non-pay status for the period in question and his restoration to duty were adopted and approved by the executive heads of the District government.[5] We rule that his removal was accomplished lawfully and that accordingly he is not entitled to recover wages for the time he was in non-pay status.

The Corporation Counsel also contends that as appellant rendered no services while in non-pay status the District is prohibited from compensating him for that period because of the provisions of Code 1951, § 1–310.[6] He also refers us to Meredith v. The

---

5. Code 1951, § 1–216.

6. "No civil officer, clerk, draftsman, copyist, messenger, assistant messenger, mechanic, watchman, laborer, or other employee shall, after June 30th 1905, be employed in any office, department, or other branch of the government of the District of Columbia or be paid from any appropriation made for contingent ex-

penses, or for any specific or general purpose, unless such employment is authorized and payment therefor specifically provided in the law granting the appropriation or is authorized as hereinafter provided, *and then only for services actually rendered in connection with and for the purposes of the appropriation from which payment is made* and at the rate of compensation usual

District of Columbia, 10 D.C. 52, 3 Mac-Arthur 52 and District of Columbia v. Selden, 63 App.D.C. 40, 68 F.2d 988. We are not prepared to say that this last point is not well taken but in the light of the views expressed by us in this opinion we are not required to pass on this particular contention.

Affirmed.

and proper for such services, and on and after July 1, 1905, all moneys accruing from lapsed salaries, or for unused appropriations for salaries, shall be covered into the treasury as are the balances of other unexpended appropriations for the support of the government of the District of Columbia." (Emphasis supplied.)