**Vivek KUMAR, Appellant,**

v.

**DISTRICT OF COLUMBIA WATER & SEWER AUTHORITY, et al., Appellees.**

**No. 08–CV–1531.**

District of Columbia Court of Appeals.

Submitted Nov. 11, 2010.

Decided July 7, 2011.

David A. Branch, with whom Alexander Hillery, II, was on the brief, for appellant.

Heather S. Gelfuso, with whom Grace E. Speights and Karen E. Gray, Washington, DC, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, BLACKBURNE–RIGSBY, Associate Judge, and KING, Senior Judge.

WASHINGTON, Chief Judge:

Vivek Kumar appeals the rulings of the trial court dismissing his negligent or fraudulent misrepresentation and his race or national origin discrimination claims against the District of Columbia Water and Sewer Authority ("WASA") and Michael Carter, his supervisor. On the day of trial, the trial court dismissed Kumar's negligent or fraudulent misrepresentation claim after granting appellees motion *in limine* to exclude certain evidence. Subsequently, at the close of Kumar's evidence in his discrimination case, the trial court granted appellees' motion for judgment as a matter of law. Kumar argues that the trial court erred in both of these decisions. Finding no error, we affirm.

## I. FACTUAL BACKGROUND

Kumar, a man of Indian descent, was employed as Manager of Procurement and Material Management at WASA from June 2003 until March 2005, during which time his department received several accolades. Kumar was responsible for administering WASA's water-filter distribution program in response to a lead crisis in 2004 and received personal acknowledgment from the general manager for his department's successes in this program at that time. He was supervised by the Director of Procurement, Roger Ball, an African–American male who reported to the assistant to the general manager, Michael Carter, another African American male. According to Kumar, his relationship with Carter was tense and Carter did not speak to him, but maintained collegial relations with other employees. Kumar testified that, on more than one occasion, Carter decreased a performance rating given to Kumar by Ball. Another employee testified that Carter once referred to Kumar as a "greasehead" in a conversation between Carter and that employee.[1]

In 2004, Kumar requested that WASA approve and fund his travel to an out-of-town professional training in procurement. Though Ball approved the request, Carter denied it, stating that there was a board meeting that Kumar was required to attend at the time of the training, and that he had heard rumors that Kumar was seeking employment outside WASA. Although Carter never agreed to send Kumar to the training, WASA later approved Kumar's request for personal leave to attend the training at his own expense, despite the scheduling of the board meeting.

In August 2004, Kumar filed an internal Equal Employment Opportunity complaint, supported by Ball, that alleged biased and discriminatory actions towards him by Carter but nowhere mentioned his race or national origin as a factor in these actions. WASA later investigated his com-

---

1. In his opening appellate brief, Kumar states that in addition to the "greasehead" comment, Carter referred to Kumar as "that [expletive] Indian" in a conversation with another employee. However, that employee did not testify and thus that comment was never admitted into evidence in this case. Therefore that comment is not before us on appeal.

plaint and found the complaint lacked merit.

Later that same month, Kumar's department requested authorization to purchase new water filters for the next fiscal year of the filter program that began in September. Kumar testified that he submitted a purchase order timely but that the voucher was never processed. Between September 2004 and February 2005, WASA's general manager was out ill, but when he returned and found out that no new filters had been purchased, he told Ball that he should have informed him of the delay directly, and asked for Ball's resignation effective on February 15, 2005.

On March 15, 2005, Kumar applied for Ball's then-vacant position of Director of Procurement through WASA's human resources website and sent a confirmation to WASA's human resources manager. Less than two hours later, Kumar was called into Carter's office. Carter informed Kumar that his services would no longer be needed at WASA, based on the managerial embarrassment flowing from his department's failures regarding the filters. Carter was also aware that Kumar had signed two agreements with outside vendors that Kumar was not authorized to sign. Carter informed Kumar that he must either resign or be terminated. Carter also indicated that Kumar needed to decide right then whether to accept a severance package and waive any age-based causes of action, or to reject the package and preserve his claims.[2] Kumar resigned and signed a waiver of his claims, but WASA allowed Kumar to revoke his waiver. He later pursued his age-based claims in federal court. WASA did not, however, grant Kumar's request to revoke his resignation.

## II. PROCEDURAL HISTORY

Kumar subsequently sued WASA and Carter for negligent or fraudulent misrepresentation based on Carter's failure to allow Kumar the OWBPA-required time to review his severance agreement, and for race or national origin discrimination. Prior to trial, appellees moved for summary judgment before Judge Terrell, claiming, *inter alia*, that Kumar could not show harm flowing from its OWBPA-related misrepresentation because Kumar was allowed to revoke his waiver and pursue his claims. Judge Terrell considered the motion and denied it in a brief order that merely stated that there remained material issues of fact regarding the claim.

The case was subsequently transferred to Judge Natalia Combs Greene for trial.[3] Before Judge Combs Greene, appellees made several motions *in limine*. Relevant here is appellees' motion to limit evidence on Kumar's negligent or fraudulent misrepresentation claim. Appellees asserted that it would be improper to present to the jury the legal question of whether the OWBPA required WASA to allow Kumar to revoke his resignation in addition to his waiver, and that Kumar could not show harm flowing from appellees' misrepresentation because he was later able to revoke his waiver and pursue his claims. The trial court agreed with the latter argument and dismissed Kumar's misrepresentation claim completely. Additionally, at the

**2.** This, as WASA later admitted, was a violation of the Older Workers Benefit Protection Act ("OWBPA"), which requires that any waiver of age discrimination claims made by an employee in connection with a severance agreement be made knowingly and voluntarily. *See generally* 29 U.S.C. § 626(f) (1991).

In keeping with that requirement, § 626(f)(1)(F)(i) provides that an individual must be "given a period of at least 21 days within which to consider the agreement."

**3.** Judge Terrell retired during the pendency of this litigation.

close of Kumar's evidence, appellees moved for judgment as a matter of law on Kumar's discrimination claims, which the trial court granted. Kumar now appeals both of these decisions.

## III.  ANALYSIS

### A.  *Dismissal of Kumar's Negligent or Fraudulent Misrepresentation Claim*

■ Kumar first challenges the trial court's dismissal of his negligent or fraudulent misrepresentation claim based on appellees' motion *in limine*. By ordering that Kumar's "claim [be] dismissed" because Kumar could not "show any damage," the trial judge effectively granted summary judgment to the appellees on that claim. No matter how appellees' motion was styled, the trial court's conclusion essentially expressed that because there was no genuine issue of material fact on which a jury could find that Kumar was harmed by the alleged misrepresentation, he was not aggrieved as a matter of law. Despite appellees' vigorous contentions that the motion was actually a motion *in limine*,[4] the nature of a motion is determined "by the relief sought and not ... what a party represents the motion to be." *Taylor v. United States*, 759 A.2d 604, 609 (D.C.2000). We will therefore construe the motion as one for judgment as a matter of law for purposes of our analysis, and determine whether the trial court erred in granting it.

Because the parties had litigated the issue of harm in their pleadings at the summary judgment stage before Judge Terrell, Kumar urges us to hold that Judge Terrell's prior ruling denying summary judgment established the "law of the case," such that Judge Combs Greene was prohibited from revisiting the issues before trial. For the reasons that follow, we disagree.

### 1.  *The Law of the Case Doctrine*

■ As detailed in *Tompkins v. Washington Hosp. Ctr.*, 433 A.2d 1093, 1098 (D.C.1981) (quotations omitted):

> The "law of the case" doctrine bars a trial court from reconsidering the same question of law that was presented to and decided by another court of coordinate jurisdiction when (1) the motion under consideration is substantially similar to the one already raised before, and considered by, the first court; (2) the first court's ruling is sufficiently final; and (3) the prior ruling is not clearly erroneous in light of newly presented facts or a change in substantive law.

Although we agree with Kumar that appellees' motions were substantially similar, we do not agree that the trial court's ruling on the first motion was sufficiently final to establish the law of the case, and find no error in Judge Combs Greene's dismissal of Kumar's claim.

### a.  *"Substantially Similar"*

■ Kumar argues that the appellees' motion on the day of trial was "substantially similar" to its prior motion for summary judgment that Judge Terrell denied.[5]

---

4.  Kumar's complaint that counsel for his opponents improperly captioned its motion is not a basis for our review. Because we "review the record for legal error or abuse of discretion by the trial judge, not by counsel," *Irick v. United States*, 565 A.2d 26, 33 (D.C. 1989), our concern is whether it was improper for the trial court to grant the relief requested.

5.  In the alternative, Kumar relies on *Tompkins, supra*, to argue that, to the extent appellees' motion was different from their original motion for summary judgment, Kumar was deprived of the required ten-day period in order to respond to a motion for summary judgment. 433 A.2d at 1099 ("[T]he ten-day notice provision is mandatory, not discretionary, and trial judges are obliged to enforce the

Both Judges Terrell and Combs Greene were presented with the argument that Kumar could not show harm flowing from WASA's representation that he must immediately sign his severance agreement and waiver because Kumar was subsequently allowed to revoke his waiver and pursue his age-based claims. The only new issue raised before Judge Combs Greene was whether it was appropriate for a jury to decide whether WASA was also required by law to allow Kumar to revoke his resignation. This issue, however, was not the impetus for Judge Combs Greene's decision,[6] as demonstrated by her statement that though she "tend[ed] to agree with the defense's" argument on the OWB-PA jury question issue, "more importantly, [she] agree[d] fully with the defense that there's no damage." Judge Combs Greene went on to hold that Kumar "can[not] show damage and that's a necessary element, [ ] so that claim is dismissed." Because this is precisely what the appellees argued in their prior summary judgment motion, we conclude that the motions were "substantially similar." *See Tompkins, supra,* 433 A.2d at 1098.

### b. *"Sufficiently Final"*

■ However, regarding the finality of Judge Terrell's decision, we have long held that the denial of a motion for summary judgment, as we are presented with here, is not "sufficiently final" to establish the law of the case. *See, e.g., Guilford Transp. Indus., Inc. v. Wilner,* 760 A.2d 580, 593 (D.C.2000) ("[D]enial of a motion for summary judgment by one judge does not foreclose grant of summary judgment by another judge.") (citing 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (1981 & Supp.2000)); *Washington v. Government of D.C.,* 152 A.2d 191, 192 (D.C.App.1959) ("We have held that an order denying a motion to dismiss or for summary judgment is an interlocutory and not a final order and that a final judgment is required to sustain the application of the law of the case rule."); *McNeill v. Jamison,* 116 A.2d 160, 161 (D.C.App.1955) ("Long ago it was decided that interlocutory rulings do not settle the law of a case and are not conclusive or binding on the trial judge, who has the ultimate responsibility of deciding the case on the merits."); *see also United States v. U.S. Smelting, Refining & Min. Co.,* 339 U.S. 186, 199, 70 S.Ct. 537, 94 L.Ed. 750 (1950) (noting that the law of the case doctrine is a "discretionary rule of practice" and is thus not necessarily "controlling" under all circumstances).[7] This con-

provision strictly unless it is waived.") (citing Super. Ct. Civ. R. 56(c)); *see Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). But, because we view the motions as "substantially similar," we need not apply the ten-day rule. We stated in *Tompkins* that "[a]s a matter of common sense, of course, there may be times when a purely formal renewal of a motion for summary judgment does not require adherence to the ten-day notice provision." *Id.* at 1100. There, we found "significant differences" between the two motions at issue that—while precluding application of the law of the case doctrine—required application of ten-day rule of Rule 56(c). *Id.* Conversely here, appellees' second motion was a "simple renewal" of their argu-

ments on summary judgment: Kumar's counsel stated in response to it, "she's rearguing the motion for summary judgment." Accordingly, as we stated in *Tompkins,* "a 'simple renewal' ... is not subject to the ten-day notice requirement of Rule 56(c)," *id.,* but, as we acknowledge here, may nonetheless be subject to law-of-the-case analysis. *See id.* at 1100 n. 10.

**6.** We therefore need not reach this issue in this case.

**7.** *But see Kaplan v. Pointer,* 501 A.2d 1269, 1270–71 (D.C.1985) (holding that an order denying an executive official's motion for summary judgment premised on "absolute

clusion is bolstered by the fact that Judge Terrell did not set forth in her order her reasons for denying summary judgment, and, importantly, Judge Terrell herself acknowledged in other phases of the proceedings that she expected the trial judge to reconsider her rulings.[8] On this record, we do not find Judge Terrell's ruling to be "sufficiently final" to justify reliance on the law of the case doctrine.

### 2. The Trial Court's Grant of Appellees' Motion

Having decided that Judge Terrell's ruling was not sufficiently final to establish the law of the case, we still must determine whether the trial court erred in granting judgment to appellees. *See Elmira Corp. v. Bulman*, 135 A.2d 645, 647 (D.C.App.1957) (after deciding that the denial of a motion for summary judgment did not establish the law of the case, "[t]he only remaining question is whether the trial judge decided the case correctly on the merits"); *see also Williams v. Paul*, 945 A.2d 607, 611 n. 4 (D.C.2008); *Wilner, supra*, 760 A.2d at 593 ("[R]eversal is not warranted where ... the appellate court agrees on the merits with the second judge's analysis."); *District of Columbia v. Faison*, 278 A.2d 688, 690 (D.C.1971).

We review a grant of summary judgment *de novo*. *Phillips v. Fujitec America, Inc.*, 3 A.3d 324, 327 (D.C.2010).

In doing so, we view the facts in the light most favorable to the non-moving party and ask whether the record demonstrates that there is no genuine issue of material fact on which a jury could find for the non-moving party. In other words, does the evidence present a sufficient factual disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law.

*Id.* at 327–28 (quotations omitted).

To prevail on a claim of negligent or fraudulent misrepresentation, a plaintiff must show, *inter alia*, that his reliance on the defendant's misrepresentation was to his detriment. *See Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999); *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C.1983).[9]

■ The material facts are not in dispute. When told his employment with

---

immunity" was sufficiently final to establish the law of the case because "an order denying such a motion is deemed to have the finality requisite for appellate review" under the "collateral order doctrine").

**8.** In a hearing on other pre-trial motions, Judge Terrell stated, "since the trial is not until June, [t]hat would give Judge Combs Greene ample opportunity for you all to come back before her and reargue these issues." This supports the holding that Judge Terrell's ruling lacked the finality necessary to establish the "law-of-the-case" in this particular case. *Cf. Tompkins, supra*, 433 A.2d at 1098 n. 6 (questioning the finality of first judge's ruling for law-of-the-case purposes where the first judge "explicitly reserved until trial" important questions in the case).

**9.** In order to prove fraudulent misrepresentation, a plaintiff must prove "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken ... in reliance upon the representation, (6) which consequently resulted in provable damages." *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C.2001) (citations omitted). The elements must be proved by clear and convincing evidence. *See Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C.1992). To prove negligent misrepresentation, a plaintiff must show "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment...." *Redmond, supra*, 728 A.2d at 1207.

WASA was at an end, Kumar was given two sets of choices: first, to resign or to be terminated; and second, to sign a waiver of claims in exchange for severance pay or to not sign the waiver and preserve his claims. He resigned and signed the waiver. Regarding this second set of choices, WASA admitted that Kumar was improperly denied the period of time required by the OWBPA to review his severance agreement. Subsequently, Kumar was allowed to revoke his waiver, and he indeed filed an age discrimination claim. This is what the OWBPA guarantees, *see Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998), and nothing more.[10] What is clear from the undisputed facts is that Kumar's employment with WASA was going to end that day, either through his resignation or his termination. Thus, even if he proved that he was deceived into choosing one alternative over the other, he has not alleged any detriment that turned on that choice other than the waiver of claims, which he was allowed to revoke.[11] We have held that "[t]here can be no recovery if the plaintiff is none the worse off for the misrepresentation." *Dresser, supra*, 465 A.2d at 840 n. 15 (citations omitted). As a result, we are satisfied that the trial court did not err in dismissing Kumar's negligent or fraudulent misrepresentation claim as a matter of law.

B. *Judgment as Matter of Law on Kumar's Discrimination Claims*

Kumar next challenges the trial court's entry of judgment as a matter of law for appellees on his race or national origin discrimination claims. At the close of Kumar's evidence, appellees moved for judgment as a matter of law arguing that Kumar had not put forth a *prima facie* case of discrimination and, even if he had, his evidence revealed legitimate nondiscriminatory reasons for appellees' actions that Kumar could not show to be pretextual. The trial court agreed and granted appellees' motion.

■ We review the grant of judgment as a matter of law by applying the same standard as the trial court. *McFarland v. George Washington Univ.*, 935 A.2d 337, 355 (D.C.2007). A court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This is an "exacting standard," and "it is only in the unusual case, in which only one conclusion could reasonably be drawn from the evidence, that the court may properly grant judgment as a matter of law." *Brown v. Nat'l Acad. of Scis.*, 844 A.2d 1113, 1118 (D.C.2004).

■ The District of Columbia Human Rights Act ("DCHRA") prohibits employers from discriminating with regard to the terms and conditions of employment based on an employee's protected traits, *e.g.*, race or national origin. D.C.Code § 2–1402.11(a)(1) (2006). In interpreting the DCHRA, we customarily look to federal anti-discrimination jurisprudence, specifically that interpreting Title VII of the

---

10. *See, e.g., Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1192 (10th Cir.1999) ("[T]he OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct [Age Discrimination in Employment Act] claim.") (citing *Oubre, supra*, 522 U.S. at 427, 118 S.Ct. 838).

11. Kumar was an "at-will" employee, and does not allege that his status as having "resigned" as opposed to being "fired" prejudiced him in any material way.

Civil Rights Act of 1964. *See, e.g., Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 361 n. 17 (D.C.1993). We apply the familiar burden-shifting framework in evaluating an employment discrimination claim that does not involve direct evidence of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Arthur Young, supra,* 631 A.2d at 361. Under that framework, the employee must first put forth a *prima facie* case, which raises a rebuttable presumption of discrimination. *Arthur Young, supra,* 631 A.2d at 361. To establish a *prima facie* case, the employee must show: 1) he is a member of a protected class; 2) he suffered an adverse employment action; and 3) the circumstances give rise to an inference of discrimination. *See Stella v. Mineta,* 284 F.3d 135, 145, 350 U.S.App.D.C. 300, 310 (2002). If the employee establishes a prima facie case, the employer bears the burden to produce evidence of a legitimate, nondiscriminatory reason for its actions. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the employer carries this burden, the burden shifts back to the employee to prove that the employer's stated reason is a mere pretext for discrimination. *Id.* Though the burdens shift, it is the employee who at all times bears the ultimate burden to persuade the trier of fact that the employer took adverse action against him because of his protected trait. *Id.*

The parties do not dispute that Kumar is a member of a protected class. The question before us is whether WASA's decisions 1) denying his training request, 2) preventing him from competing for the Director of Procurement position, and 3) separating him from his employment were adverse employment actions motivated by his race or national origin. *See id.* We deal in turn with each allegedly discriminatory action and, where appropriate, appellees' alleged legitimate reason for its action, in order to determine whether judgment as a matter of law was proper.

### 1. *"Training Request"*

Kumar claimed that appellees' denial of his request to attend an out-of-town training conference was an adverse employment action based on his race or national origin. Analogizing to *Santa Cruz v. Snow,* 402 F.Supp.2d 113, 127 (D.D.C. 2005), the trial court found that Kumar had not alleged an adverse employment action because the denial of the training request did not materially affect his employment.

We agree with the trial court. It is well-established that an adverse employment action must involve "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Although courts have recognized that "a denial of training may rise to the level of an adverse employment action," in order to prevail a plaintiff must show "legally cognizable adversity flowing from the denial...." *Everson v. Medlantic Healthcare Grp.,* 414 F.Supp.2d 77, 85 (D.D.C.2006); *Santa Cruz, supra,* 402 F.Supp.2d at 127 ("Denial of a training opportunity on allegedly discriminatory grounds can constitute an adverse employment action, [ ] but only if the denial materially affects the plaintiff's pay, hours, job title, responsibilities, promotional opportunities, and the like.") (citing *Hoffman v. Caterpillar, Inc.,* 256 F.3d 568, 574 (7th Cir.2001) (other citation omitted)). Kumar's evidence did not show that he lost pay or status as a result of the denial. Rather, far from providing proof of adversity, Kumar's evidence showed that he received an increase in salary in the months

to follow. Without more, we cannot find that the trial court erred in finding Kumar's claim insufficient under *Burlington Industries* to survive judgment as a matter of law. *See Burlington Indus., supra,* 524 U.S. at 761, 118 S.Ct. 2257 (quotations omitted) (stating that "[a] materially adverse change might be indicated by a termination of employment, ... decrease in wage or salary, a less distinguished title, [or] a material loss of benefits," but not "a bruised ego").

2. *"Opportunity to Compete"*

Kumar next claimed that he was discriminated against when WASA denied him the opportunity to compete for the position of Director of Procurement. The trial court agreed with appellees that Kumar failed to put forth a *prima facie* case on this issue because he presented no evidence as to what action WASA took with respect his application. The only evidence on record was that he applied for the position, emailed a confirmation of his application to the human resources manager, and when he was called in to Carter's office to resign or be terminated two hours later, the human resources manager was in the hallway near Carter's office.

█ Though Kumar spends much of his brief discussing his qualifications for the position and Carter's alleged animus towards him, he failed to present any evidence that Carter even knew of his application at the time of his termination. Because Kumar presented no evidence of a decision not to consider his application independent of the decision to terminate him, he has failed to provide the jury with a sufficient basis upon which to determine whether appellees' actions with respect to his application were "based on the characteristic that placed [him] in a protected class." *Brown, supra,* 844 A.2d at 1120–23 (holding that judgment as a matter of law was proper where plaintiff failed to "put on

evidence of who made the decision[,] ... what it was based on, and whether it was for an impermissible purpose...."). Accordingly, we conclude that the trial court did not err in granting judgment as a matter of law on this claim.

3. *"Separation from Employment"*

Kumar's final claim is that appellees' decision to separate him from his employment was based on his race or national origin. The trial court agreed with the appellees that Kumar had failed to provide evidence from which to infer discriminatory animus sufficient for a *prima facie* case, and, alternatively, that WASA had legitimate reasons for its actions that Kumar could not show to be pretextual. In so ruling, the trial court found that the only evidence that could be construed as ethnically-based was Mr. Carter's alleged "greasehead" comment in reference to Kumar. The trial court ultimately concluded that Kumar could not show that WASA's assertion that its decision to terminate Kumar was based on his failure to send the filters out on time and his execution of a contract he was not authorized to sign was a pretext for discrimination.

█ Even were we to agree with Kumar that the term "greasehead" was derogatory in terms of race or national origin, we would be satisfied that the trial court did not err in concluding that Kumar could not show that WASA's proffered reason for his termination was pretextual. Ultimately, despite the animus Kumar perceived on Carter's part, Kumar's evidence raised no inference of pretext to rebut appellees' proffered reasons for terminating him. His own testimony established that WASA's rationale for terminating him was "the issue on the filters," and also that the general manager never delegated to him the authority to sign the contracts that he signed. Though he argues that the filter incident was not in fact his fault, this

is insufficient to establish pretext because he could not show that appellees could not reasonably believe that it was his fault, such that their proffered reason would seem "phony." *Fischbach v. District of Columbia Dept. of Corr.*, 86 F.3d 1180, 1183, 318 U.S.App.D.C. 186, 189 (1996); *see also Waterhouse v. District of Columbia*, 124 F.Supp.2d 1, 10 (D.D.C.2000) ("While plaintiff's argument that the failure ... was not her fault may constitute a possible explanation for appellees' criticism of her job performance, it does not constitute evidence that appellees' reasons for her termination were either false or pretextual."). The Supreme Court has stated that:

> an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves, supra*, 530 U.S. at 148, 120 S.Ct. 2097. Accordingly, we see no error in the trial court's finding that Kumar could not establish that the reasons appellees proffered for terminating him were pretextual.

Having determined that the trial court did not err with regard to any of the grounds that Kumar alleged in support of his discrimination claim, we affirm the trial court's grant of judgment as a matter of law to appellees.

## IV. CONCLUSION

For the foregoing reasons, the decisions of the trial court are

*Affirmed.*